STATE *vs.* WELCOME FIDLER *et al.*

WASHINGTON—MAY 24, 1901.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Indictments. Pleas in Abatement. Grand Jury. Statutes. Mandatory and Directory.*

Gen. Laws cap. 227, § 21, provides that the town clerk, upon notification that a certain number of grand or petit jurors are required, "shall select from the lists of jurors drawn as aforesaid, in the order in which said names appear thereon, so many names as may be required:"—

*Held,* the jurors being otherwise properly drawn and qualified, that the fact that the names were not selected in the precise order of the list did not vitiate the indictment found by the grand jury, no claim of intentional wrong or misconduct being made, and the defendant being in no wise prejudiced or his legal rights interfered with by such action.

(2) *Indictments. Pleas in Abatement.*

*Semble,* a plea in abatement is not bad for duplicity if it is confined to a single point, although not to a single fact. If the defects pleaded are dependent upon the same evidence they may be joined in the same plea, which may embrace as many facts as constitute one defence.

INDICTMENT. The facts are stated in full in the opinion. Heard on demurrer to plea in abatement, and demurrer sustained.

TILLINGHAST, J. The defendant James Thurman has filed a plea in abatement to the indictment in this case, on the ground that the grand jury which found said indictment was not legally selected. The illegality assigned is that two of the jurors, namely, John J. Kenyon and John F. Fry, who were drawn from the town of Richmond, were not selected, from the list of jurors drawn from said town, in the order in which their names appeared on said list as required by statute; and hence the plea alleges that the indictment is void and should be quashed.

The State has demurred to said plea, first, on the ground of duplicity; and, second, on the ground that the provision of the statute in relation to the selection of jurors from the list drawn is directory and not mandatory, and hence that a substantial compliance therewith is sufficient.

Chapter 227, section 21 of the General Laws provides that " From time to time, as occasion may require, any justice holding said common pleas division shall direct notice to be sent to the town clerks in the county that a certain number of grand jurors or petit jurors are required, and the time and place at which they are required to attend; and every town clerk, on receiving such notice, shall select from the lists of jurors drawn as aforesaid, in the order in which said names appear thereon, so many names as may be required, and shall issue notifications to the town sergeant or to any

constable of the town where such jurors reside, under. the seal of the town council and hand of the clerk, designating therein who are grand jurors and who are petit jurors, and the time and place at which such jurors are required to attend."

(2)    1. We do not think the plea is bad for duplicity. All that is required in order to constitute a good plea in this regard is that it shall be confined to a single point; but it is not necessary that it should be confined to a single fact. If the defects pleaded are dependent upon the same evidence, they may be joined in the same plea. That is to say, the plea may embrace as many facts as constitute one proposition or matter making but one defence, so long as it does not consist of distinct and independent facts making several matters or defences. *State* v. *Ward,* 63 Me. 225; 2 Whar. Indict. § 1158; 7 Ency. Pl. and Pr. 240, and cases in note 1.

(1)    2. We think the second ground of demurrer is well taken. It appears from the plea that the jurors in question were properly drawn by the town council of said town, under a special order of a justice of this court, and that they were properly qualified to serve as grand jurors. This being so, we do not think that the mere fact that they were not selected by the town clerk from the list drawn in the order in which their names appeared thereon had the effect of rendering the grand jury, of which they formed a part, an illegal body. The "selection" by the town clerk from said list, under the statute, amounts practically to a mere notification of the requisite number of jurors named in said list that their services are required. That is to say, he has no power of "selection," strictly so called, as he must take the names in the order in which they appear on the list. And the mere fact that by accident or mistake such taking or notification was not made in the precise order of the list—it not being claimed that there was any intentional wrong or misconduct in the matter—ought not to be held to vitiate the indictment, as such action could in no wise prejudice the defendant before the grand jury or in any way interfere with his legal rights. One object of the statute, in requiring the names

to be selected or taken in the order in which they appear on the list drawn, probably is to equalize the burden of jury duty, as far as may be, by preventing favoritism by way of excusing those who are regularly drawn. Another object, doubtless, is to insure order and regularity in the details connected with the discharge of the important duties devolved upon town councils and town clerks in the matter of drawing and notifying jurors. And it is doubtless highly conducive to the fair and impartial administration of justice that all of said details should be observed and followed. And we do not wish to be understood as for a moment countenancing any intentional non-observance of the strict letter of the statute relating thereto. But it is well settled that such rules and regulations as the one now before us are directory only, and not mandatory. That is to say, it appearing, as already stated, that the persons summoned to serve were duly qualified for such service, a mere mistake, in summoning them out of the order in which their names appeared on said list, should not be held to affect the legality of the panel of which they formed a part. To permit such a technical error to upset an indictment would be to render it well-nigh impossible to enforce the criminal laws of the State.

It is pertinent to observe, in this connection, that it appears from the plea that in addition to the regular drawing of jurors, grand and petit, by the town council of said town, as required by section 15 of said chapter 227, another drawing had taken place during the year mentioned in the plea, by virtue of an order of a justice of this court in pursuance of the authority vested in him by section 18 of said chapter, which is as follows:

"Other meetings of the town councils shall be held in all towns in any county in any year, for the purpose of drawing additional grand or petit jurors for said division, whenever the clerk of the common pleas division shall, under the order of any justice thereof, notify the town clerks of the several towns in the county that such meetings are required, and at such meetings there shall be drawn such additional number of persons as such justice shall prescribe in such order."

This additional list, as we understand the statute, should follow and form a part of the list then remaining which had been previously drawn by the town council for the year, and the names remaining on the first list should properly have been exhausted before taking from the additional list drawn by the special order of the court. But it was not unnatural that the town clerk of said town should have made the mistake of supposing, as he probably did, that his selection or notification should be from the new list thus specially ordered by the court. But whether the mistake arose in this manner or not, it was evidently only a mistake at most, and a mere technical one ; and hence, as already said, it ought not, in the circumstances, to render the indictment invalid.

Pleas in abatement, for mere technical defects in the make-up of the grand jury, are generally interposed for delay and are not favored by the courts. *State* v. *Duggan*, 15 R. I. 415.

We think an indictment ought not to be set aside for mere irregularities in the selection of the grand jury, except in those cases where there has been such a departure from the requirements of the statute as to affect the substantial rights of the defendant. In the State of Kansas the irregularity in the selection of the grand jury must, under the statute, amount to corruption in order to enable a plea or objection thereto to be received. *State* v. *Skinner*, 6 Am. Crim. Rep. 307.

The law bearing upon the general question involved is well stated in *Van Hook* v. *The State*, 12 Tex. 268, where the court, in speaking of the rights of a person accused of crime, say.: "It is his right, in the first place, to have the accusation passed upon, before he can be called upon to answer to the charge of crime by a grand jury composed of good and lawful men. If the jury be not composed of such men as possess the requisite qualifications, he ought not to be put upon his trial upon a charge preferred by them ; but should be permitted to plead their incompetency to prefer the charge, and put him upon his trial, in avoidance of the indictment. Otherwise he may be compelled to answer to a criminal charge preferred by men who are infamous or unworthy to

be his accusers. And it may be that he will not have had an opportunity afforded to question their competency before the finding of the indictment. For the accused is not supposed to be present when the grand jurors are impaneled; he may not have been the subject of complaint or of suspicion; and if he could not plead to the indictment, in such a case, the incompetency of his accusers, the right to have the accusation preferred by good and lawful men might be virtually denied him. It is for the purpose, therefore, of securing to the accused a substantial right affecting, it may be, his character and good name, if not his personal security, that he is allowed to plead, in abatement or in avoidance of, the charge, the incompetency of the persons by whom it was preferred. But if the jurors who preferred the charge are good and lawful men, unexceptionable as respects qualifications, it can be of no consequence to the accused in what manner they were selected or how impaneled; while it may be of the utmost consequence to the public that the administration of justice be not delayed or defeated by mere technical objections to the regularity of the proceedings of those who are appointed for the purpose of properly distributing and equalizing the burdens of the jury service. It is in these considerations, which have respect to the rights of the citizen on the one hand and public convenience on the other, that the rules of the law on this subject are founded. And while they subserve the interests of the public, they can in no degree affect injuriously any rights of the accused." To the same general effect are *State* v. *Ansaleme,* 15 Ia. 44; *State* v. *Carney,* 20 Ia. 82; *State* v. *Cox,* 52 Vt. 471; *Com.* v. *Parker,* 2 Pick. 561; *Com.* v. *Brown,* 147 Mass. 585, and many other cases which might be cited. Mr. Wharton, in his work on Criminal Pleading and Practice, 9th ed. in § 348, says: "For such irregularities in drawing and constituting the grand jury as do not prejudice the defendant, he has no cause of complaint, and can take no exception." And in support of this proposition he cites *State* v. *Mellor,* 13 R. I. 666.

We are aware that the authorities are not entirely harmo-

nious upon the question presented for decision, but we think the position we have taken is sustained by better reasons than are those cases which hold that any defect, however trivial, in the make-up of a grand jury renders their action nugatory and void. In the previous decisions of this court, the general view, as hereinbefore stated, has been taken, and we see no reason for departing therefrom in the case at bar. If the defendant is innocent, he can as easily defend himself under this indictment, as pertinently remarked by Durfee, C. J., in *State* v. *Duggan, supra,* "as under another for the same offence."

The demurrer is sustained, and case remitted for further proceedings.

*Charles F. Stearns, Assistant Attorney-General,* for State.
*C. A. Aldrich,* for defendant.